```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ESTEBAN LATORRES, JR.,                           :

                      Plaintiff,                 :     OPINION AND ORDER

              -v.-                               :     19 Civ. 4507 (GWG)

                                                 :
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,                         :

                      Defendant.                 :
-------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Esteban LaTorres, Jr. seeks review of the Commissioner of Social Security's ("Commissioner") denial of his application for disability insurance and income benefits. LaTorres and the Commissioner both moved for judgment on the pleadings.[1] For the reasons stated below, LaTorres's motion is granted.

---

[1] See Motion for Judgment on the Pleadings, filed Dec. 20, 2019 (Docket # 18); Memorandum of Law in Support of Motion for Judgment on the Pleading, filed Dec. 10, 2020 (Docket # 19) ("Pl. Mem."); Cross Motion for Judgment on the Pleadings, filed Apr. 8, 2020 (Docket # 22); Memorandum of Law in Support of Cross Motion, filed Apr. 8, 2020 (Docket # 23) ("Def. Mem."); Reply Memorandum of Law in Opposition to Cross Motion, filed Apr. 14, 2020 (Docket # 24) ("Pl. Reply"); Reply Memorandum of Law in Support of Cross Motion, filed May 13, 2020 (Docket # 25) ("Def. Reply").

I. BACKGROUND

    A. Procedural History

On September 17, 2015, LaTorres filed an application for social security disability benefits and supplemental security income alleging a disability onset date of May 1, 2015. SSA Administrative Record, filed Sept. 19, 2019 (Docket # 10) ("R.") at 14, 125-26. His claims were denied on December 23, 2015. R. 147-53. On December 29, 2015, LaTorres requested a hearing before an administrative law judge ("ALJ"). R. 157. The hearing took place on March 29, 2018. R. 87, 89. On May 2, 2018, the ALJ denied LaTorres's claims in a written decision. R. 11-24. On March 12, 2019, the Appeals Council denied LaTorres's request for review. R. 1-3. On May 16, 2019, LaTorres filed this action seeking review of the Commissioner's decision (Docket # 1).[2]

    B. Medical Evidence

Both LaTorres and the Commissioner have provided detailed summaries of the medical evidence. See Pl. Mem. at 2-7; Def. Mem. at 3-13. The Court directed the parties to specify any objections they had to the opposing party's summary of the record. See Scheduling Order, filed Oct. 4, 2019 (Docket # 13) ¶ 5. While LaTorres did not object to the Commissioner's summary, the Commissioner objected to LaTorres's summary as incomplete. See Def. Mem. at 3. Accordingly, the Court adopts the Commissioner's summary of the medical evidence, as supplemented by LaTorres's summary, as accurate and complete for purpose of the issues raised in this suit,.

---

    [2] Although both physical and mental disabilities were raised before the Commissioner, LaTorres seeks review of the Commissioner's decision only as to his mental disabilities. See Pl. Mem. at 2 n.5.

2

We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

C.  The Hearings Before the ALJ

At the hearing held on March 29, 2018, LaTorres was represented by Jerry Ruiz.  See R. 87, 89.  Appearing as a witness was a vocational expert ("VE"), Jacquelyn Schabacker.  Id.

LaTorres testified that he was forty-seven years old and lived in the Bronx, New York. R. 93.  He had previously lived in a shelter but was at that time living in supportive housing with a roommate.  R. 94.  His living situation was "affecting [his] depression" because his roommate was "using" and he had to watch to see who his roommate was bringing into the home.  Id. LaTorres testified that he "maintain[s] the house."  R. 96.  He had "gained a lot of weight because . . . [he's] been so depressed," R. 98, although he was seeing a nutritionist, R. 99. LaTorres's highest level of education was ninth grade, id., and he "was going to special ed school" because of his dyslexia, R. 100.  At the time of the hearing he was in a "postgraduate" program.  See id.

The ALJ confirmed LaTorres's onset date as May 1, 2015, and that he had not worked since that date.  R. 101.  From 2003 to 2014, LaTorres was self-employed doing maintenance for a private house, performing duties such as sweeping, mopping, taking out the trash, and removing snow.  Id.  He had other jobs where he was performing similar maintenance.  See R. 102.  LaTorres traveled to the hearing by train.  R. 103.

LaTorres explained that his "depression, anxiety, the . . . hallucinations . . . [t]he crying spells . . . and hyperventilat[ing]" keep him from working.  R. 106.  He also testified that his "memory's [sic] not great anymore" and that his medication makes him "a little woozy" as well as "forget a lot of things sometimes."  Id.  He does "try to go out," sometimes to see friends or

3

walk to the park. R. 107. He has four children who live with their mother and he sometimes communicates with them by text. R. 107-08.

When asked about his drug and alcohol use, LaTorres testified that he "smoked weed . . . about a week and half ago" but it is not his "choice of drug. It was just something that was there and I took a drag, but I don't drink and I really don't smoke." R. 108. He said the last time he drank alcohol was in 2015 and he has remained sober with the help of his therapist and outpatient programs. R. 109. LaTorres used to see his therapist once a month but now goes once every two months. Id. His medication has "remained the same for a while" and "[i]t works good" but does make him "drowsy, sleepy." Id. LaTorres sometimes does not sleep well, although his psychiatrist has prescribed medication to help him sleep. R. 110.

LaTorres testified that he was hospitalized for a week in 2015 due to his mental health conditions. R. 111. He has been back to the hospital since but was not admitted. Id. He testified to currently feeling similar symptoms as when he was hospitalized for depression and he has discussed his feelings with his counselors. R. 111-12. LaTorres stated that he "almost gets to [the] point" where he feels like he might harm himself or someone else, but he puts on a movie as a distraction. R. 112. LaTorres also experiences visual hallucinations that happen "fairly often," including the night before the hearing. Id. The medications he is on sometimes help. R. 113.

LaTorres testified that he could follow the storylines and understand what is happening in the movies he watched. R. 113. When asked to describe his attention span, LaTorres stated that he sometimes feels like "I'm out of there like I'm . . . somewhere else." Id.

4

LaTorres was asked about his treatment by Dr. Pena,[3] who he has seen since 2015. R. 114. LaTorres testified that he has not missed any appointments with Dr. Pena recently. Id. LaTorres also sees a counselor every two weeks at the same office. Id.

The VE then testified. R. 115. She classified LaTorres's past relevant work as a housecleaner. R. 116. The ALJ then gave the VE the following hypothetical:

> [A]ssume an individual of the same age, education, and work experience as the claimant who has the following residual functional capacity: this person could perform work at all exertional levels; can understand and carry out simple and routine instructions in a low-stress job which is defined as having only occasional changes in the work setting and only occasional decision making required; this person cannot have or cannot perform fast-paced work such as assembly line work with strict production quotas, but can perform goal-oriented work that can be completed by the end of the work shift; and this person can have occasional interaction with supervisors, coworkers, and the general public.

R. 116-17. The VE testified that such an individual could not perform LaTorres's past work as a housecleaner. R. 117. There were, however, jobs in the national economy that such an individual could perform that were described as "medium, unskilled" and included laundry worker II, automobile detailer, and floor waxer. R. 117-18. The ALJ then added to the hypothetical that the person "could lift and carry 20 pounds occasionally and 10 pounds frequently; sit six hours; stand and/or walk six hours; never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, stoop, crouch, kneel, crawl, and balance." R. 118. The VE testified that such a person could perform jobs such as photocopy machine operator, mail clerk, and garment sorter. Id. However, if the individual was off task 15% of the time, there would be no available jobs. R. 120. The same would be true if the person was consistently absent two or

---

[3] The transcript refers to "Dr. Penya" but the record contains references to a "Dr. Pena." We assume "Pena" is the correct spelling.

more days per month or could not interact with coworkers or the public, even incidentally. R. 120-21.

The VE testified that Dictionary of Occupational Titles does not cover the limitations regarding absences, being off task, or having only occasional interaction with supervisors. R. 121-22. Rather, for those circumstances, the VE answered the questions based on her "professional experience, research, and education." R. 122.

D. The ALJ's Decision

The ALJ concluded that LaTorres was not disabled from his onset date — May 1, 2015 — through the date of the ALJ's decision. R. 24. In her decision, the ALJ used the five-step sequential evaluation process described in the Social Security Regulations for determining whether an individual is disabled. R. 15-24; see also 20 C.F.R. §§ 404.1520(a); 416.920(a). First, the ALJ found that LaTorres met the insured status requirements of the Act through March 31, 2019. R. 16. Next, the ALJ found that LaTorres did not engage in substantial gainful activity during the relevant period. R. 17. The ALJ then found that LaTorres had the following severe impairments: "major depressive disorder, generalized anxiety disorder, and mood disorder not otherwise specified." Id. The ALJ concluded these impairments "significantly limit the ability to perform basic work activities." Id.

At step three the ALJ determined that LaTorres's impairments or a combination of the impairments did not meet or equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 18 (citations omitted). The ALJ specifically considered the criteria in listings 12.04 and 12.06 and considered the "paragraph B" criteria. Id. The ALJ found that LaTorres had mild limitations in "understanding, remembering, or applying

information," and "adapting or managing oneself"; and moderate limitations in "interacting with others," and "concentrating, persisting, or maintaining pace." Id. This did not meet the criteria listed in "paragraph B." Id. The ALJ also considered the criteria listed in "paragraph C" but found that LaTorres did not meet those criteria either. R. 18-19.

> Before moving to step four, the ALJ determined LaTorres had the RFC
>
> to perform a full range of work at all exertional levels but the claimant can understand and carry out simple and routine instructions in a low stress job, which is defined as having only occasional changes in the work setting, and only occasional decision making required. He cannot perform fast-paced work, such as assembly line work with strict production quotas, but can perform goal oriented work that can be completed by the end of the work shift. He can have occasional interaction with supervisors, coworkers, and the general public.

R. 19. In making this determination, the ALJ followed the two-step process in which she first "determined whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms" and then evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." Id.

The ALJ considered LaTorres's testimony regarding his depression, anxiety, and mood disorder but determined that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence" and described the elements of the record and of LaTorres's testimony and demeanor that caused her to reach this conclusion. R. 19-21. The ALJ also evaluated the opinion evidence in the record. R. 20-22. This included the opinion of Dr. Pena who has "a long treating relationship with [LaTorres] and . . . [a] specialty in psychiatry." R. 21. According to the ALJ, Dr. Pena determined LaTorres to have

7

> marked limitations in getting along with coworkers without distracting them or showing extreme behaviors, moderate limitations in accepting criticism from supervisors, maintaining socially appropriate behavior, setting realistic goals, maintaining social functioning, the claimant will frequently have deficiencies in concentration, persistence, or pace, marked loss in remembering locations and work-like procedures, understanding and remembering short, simple, instructions and detailed instructions, maintaining regular attendance, being punctual, sustaining a routine without special supervision, dealing with stress of semi-skilled and skilled work, working in coordination with others without being unduly distracted, performing at a consisted pace without unreasonable rest periods, and has an [sic] extreme limitations in maintaining attention and concentration for two hour segments and completing a normal workday without interruptions for psychiatric symptoms.

R. 21 (citation omitted). The ALJ gave this opinion "some weight" but found that "this opinion is not supported by the record since the claimant generally had normal mental status examinations other than sometimes showing a depressed or anxious mood, and the records show no change in medication or dosages over the course of his treatment, indicating stability." Id. (citation omitted). Dr. Pena also submitted a check-box opinion that the ALJ gave little weight to because "it is not a full assessment of the claimants abilities and is contradicted by the generally normal mental status examinations other than sometimes showing a depressed or anxious mood." Id. (citation omitted). Dr. Pena, along with counselor Carolyn Harden LCSW, also submitted an opinion that LaTorres had "persistent depressive symptoms, feeling of drowsiness, has numerous marked mental limitations, and will be absent more than three days per month" but the ALJ gave that opinion little weight because it was "contradicted by treatment records that show no side effects from medication and the generally normal mental status examinations other than sometimes showing a depressed or anxious mood." R. 22 (citations omitted).

The ALJ also gave "little weight" to the opinion of two consultants, Drs. Nikkah and

Bhutwala.  See R. 21.  According to the ALJ, consultative examiner Dr. Nikkah described LaTorres as

> mildly limited in his ability to follow and understand simple directions and instructions, markedly limited in his ability to perform simple tasks independently, moderately limited in ability to maintain attention and concentration, markedly limited in his ability to maintain a regular schedule, mildly limited in his ability to learn new tasks, and markedly limited in his ability to perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress.

Id. (citations omitted).  The limitations were attributed to "fatigue, distractibility, lack of motivation, history of alcohol abuse."  Id.  The ALJ discounted this opinion because the exam was conducted before LaTorres's "psychiatric admission where he received medication and subsequently improved, as was reflected in the subsequent stable mental status examinations." Id. (citation omitted).  According to the ALJ, Dr. Bhutwala opined that LaTorres had mild paragraph "B" limitations and determined LaTorres to be "moderately limited in understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, and sustaining an ordinary routine." Id. (citation omitted).  The ALJ discounted this opinion, however, because "[w]hile the examiner has a psychiatric specialty and is familiar with the disability program, . . . the examiner only reviewed four exhibits from the record and did not review the claimant's psychiatric admission and subsequent treatment." Id. (citation omitted).

At step four, the ALJ determined that LaTorres was unable to perform his past relevant work as a house cleaner.  R. 23.  But, when she considered LaTorres's age, education, work experience, and RFC, the ALJ determined that "jobs that exist in significant numbers in the national economy that" LaTorres could perform.  R. 23.  Such jobs included laundry worker, automobile detailer, floor waxer, photocopy-machine operator, mail clerk, garment sorter, and

9

document addresser, among others.  Id.

## II. APPLICABLE LAW

### A. Scope of Judicial Review under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."  Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled."  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).  Rather, substantial evidence is "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));

10

accord Greek, 802 F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008).  "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted).  The "threshold for such evidentiary sufficiency is not high."  Id.  The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (citations and internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision."  Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted).

  B. Standard Governing Evaluations of Disability Claims by the Agency

  The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); accord id. § 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

  To evaluate a claim of disability, the Commissioner is required to examine: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's residual functional capacity ("RFC") to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.  DISCUSSION

LaTorres raises two arguments for reversing the ALJ's decision: (1) the ALJ did not give proper weight to the medical opinion evidence and thus failed to properly determine LaTorres's RFC, and (2) the ALJ did not properly evaluate LaTorres's subjective claims.  See Pl. Mem. at 10-21; see also Pl. Reply.  We address only the weight given to the medial opinions because this issue by itself requires remand.

LaTorres invokes the "treating physician rule."[4]  See Pl. Mem. at 10.  Under the so-called "treating physician" rule, in general, the ALJ must give "more weight to medical opinions" from a claimant's "treating source" — as defined in the regulations — when determining if the claimant is disabled.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Treating sources, which include some professionals other than physicians, see id. §§ 404.1527(a)(2), 416.927(a)(2), "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative

---

[4] Although the SSA has eliminated the treating-physician rule, the rule still applies to LaTorres's case because his claim was filed before March 27, 2017.  See Conetta v. Berryhill, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019).

13

examinations," id. §§ 404.1527(c)(2), 416.927(c)(2).  The Second Circuit has summarized the deference that must be accorded the opinion of a "treating source" as follows:

> Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion.  First, the ALJ must decide whether the opinion is entitled to controlling weight.  "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  Burgess, 537 F.3d at 128 (third brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)).  Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it.  In doing so, it must "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).  At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)). . . .  An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight at step two is a procedural error.  Selian, 708 F.3d at 419-20.

Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019) (brackets in original, ellipses added).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . . ."  Harris v. Colvin, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) (internal quotation marks and citation omitted).

Accordingly, the Second Circuit has stated that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."  Halloran, 362 F.3d at 33; accord Estrella, 925 F.3d at 96; see also Greek, 802 F.3d at 375-77.

14

While a "slavish recitation of each and every factor [listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear," Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32), even where the ALJ fails to explicitly apply the "Burgess factors," a court may, after undertaking a "'searching review of the record,'" elect to affirm the decision if "'the substance of the treating physician rule was not traversed,'" Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).  The Commissioner is not required to give deference to a treating physician's opinion where the treating physician "issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32 (citation omitted).  In fact, "the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted).

Dr. Pena is a treating physician and he offered three opinions.  See R. 21-22; cf. Def. Mem. at 17-18.  The ALJ gave Dr. Pena's April 2016 medical source statement, see R. 828-833, "some weight based on the long treating relationship with the claimant and [Dr. Pena's] specialty in psychiatry" but concluded that "this opinion is not supported by the record since the claimant generally had normal mental status examinations," R. 21 (citations omitted).  The ALJ gave Dr. Pena's October 18, 2017, check-box opinion "little weight since it is not a full assessment of the claimant's abilities and is contradicted by the generally normal mental status examinations other than sometimes showing a depressed or anxious mood." Id. (citations omitted).  The ALJ

15

likewise gave Dr. Pena and counselor Carolyn Harden's October 18, 2017, medical source statement "little weight since this opinion is contradicted by treatment records that show no side effects from medication and the generally normal mental status examinations other than sometimes showing a depressed or anxious mood." R. 22 (citations omitted).

We find the ALJ's explanation for rejecting Dr. Pena's opinions to be insufficient. The ALJ dismisses Dr. Pena's opinions, as well as the opinion from consultative examiner Dr. Nikkah, by citing the "generally normal mental status examinations" contained in the record. See R. 21-22 (citing R. 1130, 1132, 1145, 1150, 1155, 1158, 1163, 1166, 1169). While we recognize that there may be circumstances where normal status examinations would allow an ALJ to discount a treating source's opinion, see generally Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (summary order) (describing inconsistencies between treating physician's opinion and treating record and finding "[t]he ALJ comprehensively explained her reasons for discounting [the doctor's] medical source statement"), in this case the ALJ's decision gives no explanation of the ways in which the normal status findings contradict Dr. Pena's very specific opinions that covered disparate areas, see, e.g., Cirelli v. Comm'r of Soc. Sec., 2020 WL 3405707, at *11 (S.D.N.Y. May 7, 2020) (remanding where the ALJ, in affording less-than-controlling weight to a treating source, failed to "identify what normal findings or denial of symptoms he finds significant in the treatment notes identified"). The rejection of Dr. Pena's April 2016 opinion is wanting also because the ALJ said she was giving "some" weight to the opinion without any hint as to what portions were being given weight and which were being rejected outright.

In the end, we do not have a sufficient explanation as to why the ALJ believed that the

normal findings counteracted the specific marked limitations noted by Dr. Pena and what weight was being given to which of Dr. Pena's opinions.  Thus, further explanation is needed.

We note one further area of concern.  Contrary to the ALJ's statement that there was "no change in medication or dosages over the course of [LaTorres's] treatment," R. 21, it appears the record reflects such changes, compare R. 372 (prescribed "Remeron 15 mg po HS and Seroquel 50 mg po HS" on July 2, 2015); with R. 389 (noting prescription for Wellbutrin and Lithium on Oct. 21, 2015); R. 455 (on Oct. 26, 2015, LaTorres was directed to stop taking Lithium); R. 851 (March 4, 2016, notes state "medications were changed today"); R. 858-59 (on Feb. 3, 2016, prescription for Wellbutrin was increased); and R. 862 (on Jan. 6, 2016, prescription for Benadryl added).[5]

As to LaTorres's arguments challenging the ALJ's evaluation of his subjective symptoms, Pl. Mem. at 18-21, and the weight given to Dr. Nikkah, id. at 16-18, we do not believe it necessary to address them inasmuch as they may be affected by any new findings or analysis following remand.

## IV.  CONCLUSION

For the foregoing reasons, LaTorres's motion for judgment on the pleadings (Docket # 18) is granted and the Commissioner's motion for judgment on the pleadings (Docket # 22) is denied.  The case is remanded to the Commissioner for further proceedings consistent with this Opinion and Order.  The Clerk is requested to enter judgment.

---

[5]  Additionally, the ALJ observed that "the claimant had somewhat of an inconsistent work history prior to his onset dated," R. 20, though "the Commissioner concedes that Plaintiff had consistent earnings overall," Def. Mem. at  21.

SO ORDERED.

Dated: September 9, 2020
   New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge